**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JOSHUA CHRISTMAN,** *on behalf of himself and all other employees similarly situated,* <br><br> *Plaintiff,* <br><br> **v.** <br><br> **TERAWULF INC. and BEOWULF E&D (NY) INC.** <br><br> *Defendants.* | **CLASS ACTION COMPLAINT** <br> **AND DEMAND FOR JURY TRIAL** <br><br> **Civil Action No.** <br> **No. 24-cv-** |

Plaintiff Joshua Christman ("Plaintiff"), on behalf of himself and all other persons similarly situated, (collectively "Plaintiffs"), through his attorney Cordello Law PLLC brings this class action complaint against Defendants TeraWulf, Inc. ("TeraWulf") and Beowulf E&D (NY) Inc. ("Beowulf") collectively referred to as "Defendants". Additionally, Joshua Christman brings this proceeding individually to redress the deprivation of rights secured for damages as a result of Defendants' unlawful termination of his employment.

## NATURE OF THE ACTION

1. This lawsuit seeks to recover untimely wage compensation, injunctive relief, declaratory relief and other damages for Plaintiff and similar hourly workers including but not limited to: electricians, techs, operations and maintenance workers, (collectively "Manual Workers") who work or have worked as Manual Workers for Defendants in New York State.

2. Plaintiff Joshua Christman worked as a Data Center Operator at Defendants' Lake Mariner location in Barker, New York. Throughout his employment, Plaintiff and all other Manual Workers at Lake Mariner spent more than 25% of their time performing duties that were physical in nature and were therefore "manual workers" under the New York Labor Law ("NYLL").

3. In 1967, the New York State legislature amended NYLL § 198 to impose "stronger actions" in the form of liquidated damages to compel employers to comply with the requirements of Article 6 of the NYLL, including the frequency of payment requirements set forth in Section 191 of the NYLL. These "stronger actions" serve to "compensate the employee for the loss of the use of money to which he [or she] was entitled," as is the case with late wage payments, because an employee loses "the use of money [when] he or she is never paid, partially paid, or paid late." *Vega v. CM & Assocs. Constr. Mgt.*, 175 A.D.3d 1144, 1146 n. 2 (1st Dep't 2019)(citation omitted). This concept is not new. For decades, the United States Supreme Court has likewise interpreted the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"), on which the NYLL is based, as entitling employees to recover liquidated damages "regardless of whether an employee has been paid wages owed before the commencement of the action." Id. (quoting *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).

4. Defendants violated Section 191 of the NYLL by paying its Manual Workers' wages on a biweekly basis. As "manual workers" within the meaning of the NYLL, they should have been paid "weekly and not later than seven calendar days after the end of the week the[ir] wages are earned." NYLL § 191(1)(a)(i).

5. In this regard, Defendants have failed to provide timely wages to Plaintiff and all other Manual Workers.

6. Headquartered in Easton, Maryland, Defendants own and operate a bit coin mining operation in New York State – Lake Mariner located in Barker, New York.

7. At all relevant times Defendants have compensated Plaintiff and all other Manual Workers on a bi-weekly basis.

8. Plaintiff brings this action on behalf of himself and all other similar Manual Workers in

New York pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to remedy violations of the NYLL, Article 6, § 191.

9.    Additionally, this is a proceeding for declaratory relief, injunctive relief and monetary damages to redress the deprivation of rights secured to Plaintiff, Joshua Christman under NYLL § 740, for damages as a result of Defendants' unlawful termination of Mr. Christman.

10. This action seeks damages and equitable relief, costs, expenses, expert witness and attorneys' fees; restitution to Mr. Christman of all rights, privileges; declaratory and injunctive relief, including Mr. Christman's reinstatement to his former position, consequential, compensatory, punitive damages and a civil penalty of $10,000.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because there is diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000.00.

12. Venue is proper in the United States District Court for the Western District of New York pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or commissions giving rise to the claims occurred in this district.

13.    Defendants operate and do business in New York State and are subject to personal jurisdiction in this Court.

14.    Plaintiff earned on average $64,000 annually ($30.90/hour) and his claim for liquidated damages pursuant to NYLL § 191 exceeds his annual compensation based on his length of employment with Defendants.  In addition, Plaintiff's claim for retaliatory termination pursuant to NYLL § 740 includes back pay, front pay, lost fringe benefits, punitive damages and a civil penalty of $10,000.  In sum Plaintiff's NYLL claims exceed the amount in controversy limit for

- 3 -

subject matter jurisdiction.

## THE PARTIES

**A.    Plaintiff**

**Joshua Christman**

15.    Joshua Christman has been employed by Defendants as a Data Center Operator from June 20, 2022 to June 5, 2024.  Mr. Christman job duties include maintaining and installing servers, running ports, installing shelves, minor repairs and constructions, moving supplies and driving a forklift.

16.    During his employment, Mr. Christman worked for Defendants at the Lake Mariner location in Barker, New York.

17.    During his employment, over twenty-five percent of Mr. Christman's duties were physical tasks, including but not limited to: performing field repairs of electrical equipment and maintenance on buildings and equipment.

18.    Despite regularly spending more than twenty-five percent of his shift performing these physical tasks, Mr. Christman has been compensated by Defendants on a bi-weekly basis.

19.    For example, for the week beginning May 13, 2024 and ending May 26, 2024, Mr. Christman was paid his lawfully earned wages on May 31, 2024.  *See* **Exhibit A**, Christman Paystub.

20.    In this regard, Defendants failed to Mr. Christman his wages earned from May 13, 2024 through May 19, 2024 by May 26, 2024 as required by NYLL § 191 (1)(a).

**B.    Class Members**

21.    As described in more detail below, Class Members, Plaintiffs or Manual Workers are those employees of Defendant from July 31, 2018 to the date of judgment who are similarly

- 4 -

situated to the Named Plaintiff in that they were compensated on a bi-weekly basis and worked for Defendants in its location in New York State.  Consequently, the amount in controversy in this matter exceeds $75,000 exclusive of interests and costs.

**C.    Defendants**

22.    At all times relevant hereto, Plaintiff was an "employee" of Defendants as defined by the NYLL, § 651.

23.    At all times relevant hereto, Defendants are "employer[s]" as defined in the NYLL, § 651.

**TeraWulf Inc.**

24.    Defendant TeraWulf is a foreign business corporation organized and existing under the laws of Delaware.

25.    Defendant TeraWulf's principal executive office is located, Easton, Maryland.

26.    Defendant TeraWulf is a publicly traded corporation that owns and operates a bit coin mining operations including the Lake Mariner location in Barker, New York where Plaintiff worked.

27.    Defendant TeraWulf controls and owns Beowulf as detailed in its Securities Exchange Commission ("SEC") filing Form 10-K.  Specifically, Paul Prager, Chief Executive Officer ("CEO") and chairman of the board of directors of TeraWulf controls Beowulf as detailed in the SEC Form 10-K

28.    Defendant's TeraWulf's employees are engaged in interstate commerce, and their annual gross volume of sales made or business done exceeds $500,000, exclusive of excise taxes.

29.    During the course of his employment by Defendant TeraWulf, Plaintiff handled goods, including equipment and products that moved in interstate commerce.

**Beowulf E&D (NY), Inc.**

30.     Defendant Beowulf is foreign business corporation organized and existing under the laws of Delaware.

31.     Defendant Beowulf's principal executive office is located in Easton, Maryland.

32.     Plaintiff's paystub listed Beowulf as his employer.   *See* **Exhibit A**, Christman Paystub.

**Defendants Constitute Joint Employers**

33.     Defendants possess or possessed substantial control over Plaintiffs working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals referred herein.

34.     Defendants employ or employed Plaintiff and those similarly situated and are or were Plaintiffs' employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

35.     As detailed in the SEC Form 10-K Beowulf is owned and controlled by TeraWulf and pursuant to service agreements performs bit coin mining services at the Lake Mariner bit mining facility where Plaintiff worked.

36.     Upon information and belief, Defendant TeraWulf has the right to inspect the facilities and operations at Lake Mariner and the right to audit all records.

37.     Upon information and belief, Defendant TeraWulf has the authority to control, directly or indirectly, the timekeeping and payroll practices of Beowulf Defendants.

38.     Upon information and belief, Defendant TeraWulf knew or should have known of, and had the authority to exercise control over, the accuracy of records concerning the hours and wages of Plaintiffs and similarly situated employees through the monitoring of Beowulf.

39.     TeraWulf Defendant could have terminated the service agreements of Beowulf

Defendant and caused Beowul Defendant to cease operations at the Lake Mariner facility under certain circumstances, including in the event of violations of the law.  Thus, upon information and belief, TeraWulf Defendant has the authority to stop violations of the labor law and, ultimately, to control the employment of Plaintiffs, including, but not limited to, causing the termination of their employment.  Moreover, TeraWulf Defendant has had the power to induce compliance with applicable wage and hour law by threatening to terminate a service agreement with Beowulf Defendant.

40.     Upon information and belief, TeraWulf Defendant's profits and financial well-being depend upon the success of the Beowulf Defendant directly profited from the unlawful wage and hour practices at the Lake Mariner location.

41.     TeraWulf Defendant has the power to stop the unlawful wage and hours practices at its Beowulf Defendant but have not done so.

## NEW YORK CLASS ACTION ALLEGATIONS

42.     The NYLL claim is properly maintainable as a class action under Federal Rule of Civil Procedure 23 ("Rule 23").

43.     The Rule 23 class consists of the following:

> All persons who work or have worked as Manual Workers for
> Defendants in New York between July 31, 2018 and the date
> of final judgment in this matter (the "New York Class").

44.     The number of putative class members is over 40.

45.     Plaintiff's claims are typical of the those claims that could be alleged by any member of the New York Class, and the relief sought is typical of the relief which would be sought by each member of the New York Class in separate actions.

46.     Common issue of law and fact predominate in this action because resolution of

which to resolve a significant aspect of this litigation in one stroke including, but are not limited to, the following:

- Whether Defendants compensated Plaintiff and the New York Class on a timely basis.

47.     Plaintiff and the New York Class have all been injured in that they have been compensated in an untimely manner due to Defendants' common policies, practices and patterns of conduct.  Defendants' corporate-wide policies and practices affected everyone in the New York Class similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each member of the New York Class.

48.     Further, there are no known conflicts of interest between the Plaintiff and the New York Class Members.  Moreover, the Plaintiff will adequately represent the interests of the class members because he is similarly situated to the New York Class members.

49.     Class Counsel, Cordello Law PLLC is qualified and able to litigate the Plaintiffs' claims.

50.     The Class Counsel concentrates its practice in employment litigation and is experienced in class actions arising under wage and hour laws.

51.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant.  Class action treatment will permit a large number of similar persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

## NEW YORK LABOR LAW § 740 ALLEGATIONS

52.     As discussed further herein, Defendants summarily terminated Mr. Christman based

upon his objections to Defendants' unsafe work conditions which reasonable believed posed a specific and substantial danger to public safety and health.

***Mr. Christman Objects to Defendants' Unsafe Work Conditions***

53.     On December 28, 2023 and then again on January 24, 2024 Mr. Christman met with Defendants' Plant Manager Dan Heidmann to discuss his workplace safety concerns and threats of violence made by his direct supervisor Data Center Supervisor Greg Miller.  For example, Mr. Christman complained about significant Occupational Safety Health Administration ("OSHA") violations including the lack of training for operating Defendants' 30-foot bucket truck, having employees jump in dumpsters to pack down garbage, as well as Supervisor Miller's threats of physical violence towards employees.

54.     In May 2024 Supervisor Miller confronted Plaintiff Christman that he should not be documenting safety violations for OSHA.  Mr. Christman denied that he was bringing safety issues to OSHA and instead maintained that he was documenting them for the Defendants' safety meeting.  Supervisor Miller threatened to "beat up" Mr. Christman and "kick his ass" and "take him out to the stones" if he disclosed safety violations to OSHA. Shortly thereafter Mr. Christman was terminated.

***Defendants Terminate Mr. Christman***

55.     On June 5, 2024 Mr. Christman was terminated based on multiple violations of company policies, specifically unauthorized recording of a meeting on May 30, 2024.

56.     Mr. Christman's termination was in retaliation for what Defendants knew or believed to be his protected activity of objecting to Defendants' workplace safety violations which Mr. Christman reasonably believed posed a substantial and specific danger to public health and safety.

- 9 -

***Mr. Christman Engaged in Protected Activity Under N.Y. Labor Law § 740 By Objecting to Defendants' Unsafe and Dangerous Practices***

57.     Mr. Christman objected to Defendants' unsafe work conditions and threats of physical violence by his direct supervisor which Mr. Christman reasonably believed posed a substantial and specific danger to public health or safety.

58.     Mr. Christman afforded Defendants a reasonable opportunity to correct these unsafe condition, but Defendants failed to do so.

59.     By raising these concerns, Mr. Christman engaged in protected activity under NYLL § 740.

***Defendants Improperly Terminated Mr. Christman***

60.      Defendants' termination of Mr. Christman violates NYLL § 740.  Mr. Christman received an average rating on his annual performance evaluations and standard bonuses and never received any written disciplinary warnings during his tenure with Defendants.  However, after he objected to Defendants' unsafe work conditions and threats of physical violence he was summarily terminated.  Moreover, the timing of his termination indicates Defendants retaliated against Mr. Christman because he continued to disclose what he believed to be a substantial and specific danger to the public health and safety.

61.     Defendants for the first time when it terminated Mr.  Christman informed him that he had been issued a written disciplinary warning.  However, Mr. Christman never received this written disciplinary warning and requested a copy of the written warning.  To date Defendants have failed to produce this written warning.

62.     Thus, Defendants improperly discharged and retaliated against Mr. Christman because of the lawful acts he had taken under NYLL §§ 740.

**COUNT I**

**Violation of the New York Labor Law § 191 - Frequency of Payments**

63.     Defendants are an employer that is subject to and must abide by the frequency of payments provisions of the NYLL.

64.     Defendants paid Plaintiff and the New York Class on a biweekly basis.

65.     In the last six years, Plaintiff and the New York Class spent more than 25% of their working time performing work tasks of a physical nature.

66.     Plaintiffs and the New York Rule Class are "manual workers" within the meaning of NYLL § 191(1)(a)(i).

67.     By paying Plaintiff and the New York Class on a biweekly basis, Defendants paid Plaintiff and the New York Class their wages due "later than seven calendar days after the end of the week in which the wages were earned."  N.Y. Lab. L. §191(1)(a).   Defendants violated the NYLL by failing to compensate Plaintiff and the New York Class consistent with the minimum wage provisions.

68.     Because Defendants failed to pay Plaintiff and the New York Class on a weekly basis, they are entitled to recover liquidated damages equal to the full amount of their wages paid later than seven days after the end of a workweek in each biweekly period within the six years prior to the filing of this Complaint.

**COUNT II**

**Violation of New York Labor Law § 740 - Retaliation**

69.     Mr. Christman objected to Defendants' unsafe work conditions and OSHA violations threats of physical violence which he reasonably believed posed a substantial and specific danger to the public health or safety.

70.     Mr. Christman objected to, refused to participate in and or/threatened to disclose

Defendants' unsafe activities.

71.    Mr. Christman afforded Defendants a reasonable opportunity to correct the danger to public health or safety, but Defendants failed and refused to do so.

72.    In retaliation for Mr. Christman disclosures and objections, Defendants retaliated against him by terminating him in violation of New York Labor Law § 740.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the New York Class pray for judgment against Defendants as follows:

(a)    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

(b)    Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel;

(c)    An order preliminarily and permanently restraining Defendants from engaging in the aforementioned pay violation;

(d)    Liquidated damages permitted by law pursuant to the NYLL;

(e)    An award of reasonable attorneys' fees and costs;

(f)    An award of pre- and post-judgment interest;

(g)    An injunction reinstating Plaintiff to his prior position with the same seniority status, fringe benefits, and other terms and conditions of employment that Plaintiff would have had but for defendant's retaliatory acts;

(h)    An injunction permanently restraining Defendants from engaging in the aforementioned retaliation;

(i)    A declaration that Defendants' conduct complained of herein violated Plaintiff's rights as secured by the NYLL;

(j)    An award to Plaintiff in an amount equal to the amount of back pay, including lost fringe benefits and bonuses, with interest, that Plaintiff would have earned but for Defendants' retaliatory acts;

(k)    An award to Plaintiff of all compensatory and consequential damages, including the value of Plaintiff's unpaid wages and bonuses;

(l)     An award to Plaintiff of the actual losses sustained by Plaintiff as a direct result of Defendants' violations;

(m)     An award to Plaintiff of front pay, punitive damages and a civil penalty of $10,000; and

(n)     Such other and further legal or equitable relief as this Court deems to be just and appropriate.

## JURY DEMAND

Plaintiff demands a jury to hear and decide all issues of fact in accordance with Federal Rule of Civil Procedure 38(b).

Dated: July 31, 2024

**CORDELLO LAW PLLC**

By:     /s/ Justin M. Cordello_____
            Justin M. Cordello, Esq.
            *Attorney for Plaintiff*
            200 Anderson Avenue
            Rochester, New York 14607
            Telephone: (585) 967-7707
            justin@cordellolaw.com

- 13 -